John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
401 W Broadway, Suite 1760
San Diego, CA 92101
Tel.: (858) 209-6941
jnelson@milberg.com

*Attorney for Plaintiffs and the Putative Classes*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KARENA FENG, TAMMY MO, CANDICE HENTHORN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>COURSERA, INC.,<br><br>Defendant. | CASE NO. 3:23-cv-449<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiffs Karena Feng ("Ms. Feng") and Tammy Mo ("Ms. Mo") bring this action individually and on behalf of all others similarly situated against Defendant Coursera, Inc. ("Coursera" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## INTRODUCTION

1. This is a putative class action lawsuit against Defendant based on its failure to provide the requisite disclosures and authorizations required to be made to and obtained from California consumers under California's Automatic Renewal Law ("CA ARL").

2. In addition, on a nationwide basis, Defendant violated the Electronic Funds Transfer Act ("EFTA") by uniformly and routinely initiating preauthorized electronic fund transfers taking money from the bank accounts of Plaintiff and members of the Nationwide EFTA Subclass without obtaining their written authorization for the transfers and routinely failing to provide a copy of any such written authorization to Plaintiff and the Nationwide EFTA Subclass members from whose bank accounts Defendant took preauthorized electronic fund transfers for fees.

3. Founded in 2012, Coursera describes itself as a global online learning platform that offers anyone, anywhere, access to online courses and degrees from leading universities and companies.

4. Coursera received B Corp certification in February 2021, which means that it has a legal duty not only to their shareholders, but to also "make a positive impact on society more broadly."[1]

5. Defendant is based in Mountain View, CA and is allegedly partnered with more than 275 universities to provide online learning to individual and organizations worldwide.

6. Through its Website, Defendant markets, advertises, and sells to consumers in California and throughout the United States.

7. Coursera has developed a proprietary platform ("*Platform*") to host multi-media courses ("*Courses*") for consumption by end users via Coursera's properties (e.g., the Coursera website, mobile apps, and APIs; collectively, the "*Coursera Properties*");

8. Coursera offers a variety of payment plans, from completely "free" to paying for an individual course or via a monthly or annual subscription (collectively, the "Subscriptions").

[1] https://about.coursera.org/ (last visited on January 31, 2023).

9.    To sign up for one of Defendant's Subscriptions through the Coursera's Website, customers must provide Defendant with their billing information and Defendant then automatically charges customers' on monthly or yearly basis.

10.    At the check-out screen, Plaintiff and customers were misled into believing that they signed up for a free service only to incur a charge.

11.    Defendant is also able to unilaterally charge its customers' renewal fees without their consent, as Defendant is in possession of its customers' billing information.

12.    Many users of the Coursera Properties believe they are purchasing one course when they sign you up and then they discover that they are being charged for recurring payments. A $49 fee for a single course quickly turns into several hundred dollars of fees.

13.    Still other end users do not realize until there so called "7-day Free Trial" is over that they are going to be incurring a monthly subscription fee.

14.    The Federal Trade Commission (FTC) Act's Section 5 is the primary federal statute that governs the use of ARL provisions. The FTC's guidance on negative option features advises businesses to adhere to five fundamental principles for compliance.  (See Negative Options – A Report by the staff of the FTC's Division of Enforcement attached hereto as Exhibit "1"). The five principles are as follows:

**Principle 1**. Disclose material terms, including existence, total cost, third-party billing terms, and how to cancel payment (See Id. at p.8);

**Principle 2**. Make disclosures visible by placing them in prominent locations (See Exhibit Id. at p.7);

**Principle 3**. Disclose material terms of the offer to consumers before payment (See Id.);

**Principle 4**. Obtain consumers' affirmative consent to the offer rather than relying on a pre-checked box (See Exhibit "1"p.7); and

**Principle 5**. Avoid impeding the effective operation of promised cancellation procedures (See Exhibit “1”p.7).

**CALIFORNIA AUTOMATED RENEWAL LAW**

15. Pursuant to the CA ARL, online retailers who offer automatically renewing subscriptions to California consumers must: (a) obtain affirmative consent prior to the consumer’s purchase. It is generally accepted that a checkbox to agree next to the automatic renewal clause may suffice. However, the checkbox should not be “pre-checked” and if the consumer is also agreeing to other terms and conditions of the purchase, that consent should be separate from the automatic renewal consent; (b) provide the complete auto-renewal terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the purchase; (c) provide an acknowledgement identifying an easy and efficient mechanism for consumers to cancel their subscriptions; and (d) as of July 1, 2022, if the automatically renewing offer includes an initial term that lasts for one year or longer, then the business must provide notice between 15 days and 45 days before the date of renewal.

16. Defendant violated the CA ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers’ Payment Method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Sections 17602(a)(3) and 17602(b). Cal. Bus. & Prof. Code §§ 17602(a)(l), (a)(2), (a)(3), (b).

17. As a result, the access to the sports broadcasting, or streaming services granted to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" under the ARL. Cal. Bus. & Prof. Code § 17603.

18. Accordingly, Plaintiff brings this action individually and on behalf of all California purchasers of any of Defendant's Subscription offerings who, within the applicable statute of limitations period up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their Coursera Subscriptions.

19. Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (ii) conversion; (iii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (iv) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (v) unjust enrichment/restitution; (vi) negligent misrepresentation; and (vii) fraud.

**THE PARTIES**

20. Plaintiff KARENA FENG (hereinafter referred to as "Feng") is a citizen of California, residing in San Francisco, California.

21. In or around July 2021, Ms. Feng signed up for a free trial of Defendant's online learning platform to while in California.

22. Plaintiff TAMMY MO (hereinafter referred to as "Mo") is a citizen of California, residing in San Francisco, California.

23. In or around August 2022, Ms. Mo signed up for a free trial of Defendant's online learning platform to while in California.

24.     Plaintiff CANDICE HENTHORN (hereinafter referred to as "Henthorn") is a citizen of California, residing in San Francisco, California.

25.     In or around 2016, Ms. Henthorn signed up for a free trial of Defendant's online learning platform to while in California.

26.     At the time of enrollment, Mo, Feng and Henthorn were not aware that, upon the expiration of their free trial subscription, Defendant would automatically convert their free trial into a paid, automatically renewing subscription.

27.      During the enrollment process, but before finally consenting to Defendant's subscription offering, Mo, Feng and Henthorn provided their Payment Method information directly to Defendant.  At the time Mo, Feng and Henthorn enrolled in Coursera's online learning platform, Defendant did not disclose to Mo, Feng and Henthorn all required automatic renewal offer terms associated with the subscription program or obtain Mo's, Feng's and Henthorn's affirmative consent to those terms.

28.     Further, after Mo, Feng and Henthorn completed their initial order, Defendant sent Mo, Feng and Henthorn an acknowledgment email that failed to provide Mo, Feng and Henthorn with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Mo's, Feng's and Henthorn's Coursera's subscriptions in a manner capable of being retained by them.

29.     Mo, Feng and Henthorn did not receive any other acknowledgment that contained the required information.

30.     After Mo first signed up for her subscription on a free trial basis, Defendant automatically renewed Mo's Subscription and tried on several occasion to charge Mo's Payment

Method the full standard monthly rate associated with the Coursera's monthly subscription – approximately $49.00.

31.     After Feng first signed up for her subscription on a free trial basis, Defendant automatically renewed Feng's Subscription.

32.     Feng's Payment Method was charged an annual Subscription fee of $399.00 on July 13, 2020 and another annual Subscription fee of $399.00 on July 13, 2021.

33.     Ultimately, Feng notified Defendant several times that she did not authorize these charges and to request a refund.  However, Defendant denied Feng's refund request.

34.     Henthorn first signed up for her subscription on a free trial basis, Defendant automatically renewed Henthorn's Subscription.

35.     Upon information and belief, Henthorn's Payment Method was charged a monthly Subscription fee.

36.     However, because Henthorn is out-of-work, Defendant was unable to process the monthly fees from July 2023 through October 2023.

37.     Mo, Feng and Henthorn have lost sleep due to the stress and anxiety caused by Defendant's unauthorized automated renewal fees.

38.     Mo, Feng and Henthorn have also wasted their time in dealing with these unauthorized charges.

39.     Defendant's inadequate disclosures and refusal to issue a refund are contrary to the ARL, which deems products provided in violation of the statute to be a gift to consumers.  Cal. Bus. & Prof. Code § 17603.

40.     Had Defendant complied with the ARL, Mo, Feng and Henthorn would have been able to read and review the pertinent automatic renewal terms prior to enrollment and purchase,

and they would cancelled her Subscription earlier, i.e., prior to the expiration of the initial free trial period.

41.     As a direct result of Defendant's violations of the ARL, Mo, Feng and Henthorn suffered, and continue to suffer, injury.

42.     Defendant Coursera Inc. ("Cousera" or "Defendant") is a U.S.-based massive open online course provider founded in 2012 by Stanford University computer science professors Andrew Ng and Daphne Koller.

43.     Coursera works with universities and other organizations to offer online courses.

44.     Coursera went public in or about March 2021 and is now traded on the New York Stock exchange under the ticker symbol "COUR" .

45.      According to Coursera's CEO, Jeff Maggioncalda, Coursera went into the IPO with $275 million in the bank and it will have approximately three-quarters of $1 billion in cash post-IPO.

46.     Coursera's principal place of business is located at 381 E. Evelyn Ave., Mountain View, California 94041.

47.     Coursera works with universities and other organizations to offer online courses, certifications, and degrees in a variety of subjects.

48.     Defendant also promotes, advertises, and/or markets its automatic renewing subscription plans which provides the end users with access to the online courses.

49.     Defendant sells Subscriptions in California and has done business throughout California and throughout the United States at all times during the Class Period.

50.     Defendant also made automatic renewal or continuous service offers to consumers in California and throughout the United States via the Coursera Properties.

51. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

**JURISDICTION AND VENUE**

52. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

53. This Court has personal jurisdiction over Defendant.

54. Defendant does business in California and has sufficient minimum contacts with this state, including within this District, and/or has otherwise intentionally availed itself of the California consumer market through the promotion, marketing, and sale of its products and/or services to residents within this District and throughout California.

55. Additionally, Plaintiffs purchased Coursera Subscription from Defendant while in California.

56. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Also, Plaintiffs reside in this District and purchased Defendant's Subscription in this District. Moreover, Defendant systematically conducts business in this District and throughout the State of California, and it distributed, advertised, and sold the its Subscriptions to Plaintiffs and Class Members in the State of California.

## GENENERAL FACTUAL ALLEGATIONS

**A. The History of the Subscription e-Commerce Market**

57. The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[2]

58. Subscription e-commerce services target a wide range of customers and cater to a variety of specific interests. Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years. Indeed, the "subscription economy has grown more than 400% over the last 8.5 years as consumers have demonstrated a growing preference for access to subscription services[.]"[3]

59. Analysts at UBS predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from $650 billion in 2020.[4] That constitutes an average annual growth rate of 18%, which makes the subscription economy "one of the fastest-growing industries globally. [5]

---

[2] See https://www.coredna.com/blogs/ecommerce-subscription-services.

[3] Business Insider, Taco Bell's taco subscription is rolling out nationwide — here's how to get it (January 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1 (internal quotation marks omitted).

[4] See UBS, Investing in digital subscriptions (March 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual growth rate of 18%."). See also Subscribed, UBS Declares: It's Worth Investing in the Subscription Economy (April 17, 2021), https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-the-subscription-economy; Business 2 Community, The Subscription Economy Is Booming Right Now. But Are You Reaping the Full Benefits? (October 7, 2021), https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right- now-but are-you-reaping-the-full-benefits-02434851.

[5] UBS, Investing in digital subscriptions (Mar. 10, 2021), supra ("[Growth] was seen across many areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); see also Juniper Research, Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025; Growing To Over $263bn Globally (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake

60. As noted above, the production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years. According to Forbes, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[6] Following 2016, market growth within the industry increased exponentially, reaching $650 billion in 2020.[7] "As such, the financials of companies with subscription business models[] … improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow generation."[8] Thus, "[t]he share prices of most subscription companies have performed well in recent years."[9]

61. The expansion of the subscription e-commerce market shows no signs of slowing. "We're now in the subscriptions era, and the pandemic is accelerating its takeover. During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[10] According to The Washington Post, "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the

---

(acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service subscriptions]").

[6] The State Of The Subscription Economy, 2018, Forbes (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[7] See UBS, Investing in digital subscriptions (Mar. 10, 2021), available at https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.

[8] Id.

[9] Id.

[10] UBS, Investing in digital subscriptions (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.

pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[11]

62. However, as The Washington Post has noted, there are downsides associated with the subscription-based business model. While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[12] In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[13] Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[14] As these companies have realized, "[t]he real money is in the inertia."[15] As a result, "[m]any e-commerce sites work with third-party vendors to implement more manipulative designs."[16] That is, to facilitate consumer inertia, a number of subscription e-commerce companies, including Defendant, "are now taking advantage of subscriptions in order

[11] The Washington Post, Everything's becoming a subscription, and the pandemic is partly to blame (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

[12] McKinsey & Company, Thinking inside the subscription box: New research on e-commerce consumers, (February 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking- inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[13] Id.

[14] Washington Post, Little-box retailing: Subscription services offer new possibilities to consumers, major outlets (April 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[15] Id.

[16] Business Insider, A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want (June 25, 2019), https://www.businessinsider.com/dark-patterns-online- shopping-princeton-2019-6.

to trick users into signing up for expensive and recurring plans. They do this by intentionally confusing users with their app's design and flow, … and other misleading tactics[,]" such as failure to fully disclose the terms of its automatic-renewal programs. [17]

63.   To make matters worse, once enrolled in the subscription, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[18] Moreover, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly, consumer advocates say."[19] Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts [and] attempting to respond to a proliferation of abuses by some companies over the past few years[,]"[20] widespread utilization of these misleading dark patterns and deliberate omissions persist.

64.   Defendant has successfully engaged these practices. According to The report,  Coursera is maintaining its pace, adding 5 million learners per quarter.[21] In April 2022, Coursera crossed 100 million registered learners.[22]

---

[17] TechCrunch, Sneaky subscriptions are plaguing the App Store (October 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.
[18] The Washington Post, Everything's becoming a subscription, and the pandemic is partly to blame (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'"); see also New Media and Marketing, The problem with subscription marketing (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.
[19] Id.
[20] Id.
[21] https://www.classcentral.com/report/coursera-q1-2022/.
[22] Id.

**B. Defendant's Online Complaints are Indicative of its Unlawful Subscription Practices**

65. Consumers have complained on social media outlets both about Defendant's misleading enrollment process as well as its unclear cancellation process.

66. Consumers complain about being charged a "one-time" fee for watching an event to then discover they had been charged for a year membership.

67. Also, consumers complained about being misled into believing they were enrolling a in a free trial membership only to find out later that they were incurring monthly charges.

68. Many other users of Coursera believe they are purchasing one course when they sign you up and then they discover that they are being charged for recurring payments. A $49 fee for a single course quickly turns into several hundred dollars of fees.

69. Other users were unable to cancel their monthly subscription fees.

70. There over 333 reviews of the Defendant on Trustpilot, many of which involve these same issues.[23] As of November 12, 2022, 68 percent were 1-star reviews and 9 percent were 2-star reviews with 1-star being the lowest rating and 5-star the highest in regarding to customer satisfaction.[24] Defendant's average rating is 1.7-star.[25]

71. Below is just a sampling of those reviews:

---

[23] https://www.trustpilot.com/review/coursera.org?page=2
[24] Id.
[25] Id.

ZF **z fei**
1 review VN

Jan 6, 2023

**I was charged for 39$ just to register...**

I was charged for 39$ just to register for a free course. They dont send any reminder about free periods and charge it and not refundable.

I didnt follow that free course and not know that until I reveive notification that my account has been charged.

**Date of experience:** January 05, 2023

BR **Brad**
1 review MA

Jan 16, 2023

**Coursera Plus "Free" Upgrade is a total...**

Coursera Plus "Free" Upgrade is a total scam. I purchased a course to have it forever and was tricked into changing this purchase into a Coursera Plus subscription, with the website stating it was the same exact thing except one gets more courses. It was not a free add-on after all, the course I originally purchased disappeared after a month unless I continued with my subscription. Very disappointing sales tactics for a company with otherwise good quality material overall.

**Date of experience:** January 14, 2023

MM **Mahmoud Moustafa**
1 review SA

6 days ago

**i subscribed only once for a course**

i subscribed only once for a course, and they keep charging me every month, also they are hiding the contact us form in the website, they are fake and unethical in business!

**Date of experience:** January 22, 2023

TM **teresa mosley**
1 review US

★☆☆☆☆ 4 days ago

**Unable to cancel free trial**

I signed up for a free trial, and wasn't impressed with them. The website is difficult to navigate and the help section isn't actually very helpful.

I tried to cancel by free trial, but the instructions to do so were incorrect. There was no free trial ever listed under my subscriptions, so I couldn't cancel.

Now I am having to hash it out with them to get my money back when it seems this is a common issue from them.

**Date of experience:** December 15, 2022

RS **Roman Sparks**
1 review GB

★☆☆☆☆ Dec 16, 2022

**Signed up for a 7 day trial**

Signed up for a 7 day trial, I went to cancel as the app wasn't for me but it gave and me no option to cancel anything, i have a screenshot on the app saying there's no subscriptions but yet £51 still came out my account this morning

**Date of experience:** December 15, 2022

SA **Sani**
5 reviews GB

Dec 6, 2022

### Useless courses

Bad quality courses, annoying spam letters(spam button doesn't work for them), useless diploma(my friend finished their courses). Don't recommend. I gave it a try with 30 day - free trial period. After that automatically paid £42. Unsuccessfully tried to get money back with PayPal help. Because I didn't spend there an hour. After I got what that's not what I'm looking for.

**Date of experience:** December 04, 2022

ND
Nadia d
2 reviews
CA

Dec 3, 2022

### Difficult to cancel subscription: here's how to do it

Hi from canada - Do NOT sign up. If you do and what to cancel, the only way to do so is to go to your email receipt and access the course from there - then go to My Account- My Purchases and voila! The course cancel subscription button is suddenly available. It wasn't available by going directly to either the app or the website. All I saw under My Account and My Purchases, in that case, were the months they were able to successfully cheffe me for - NO cancellation button. And no easy way to contact you.

**Date of experience:** December 02, 2022

MP **Manisha Pankhania**
2 reviews GB

Nov 21, 2022

**Subscription Payments wont stop!!**

Hi all

I signed up for a free month, post the free trial I cancelled my subscription however 2 months of payments have still been direct debited from my bank account. There is no way to speak to anyone to resolve the issue, the help page on the website is useless as its all automated and I am at a loss as to what to do.

This company looks fraudulent. Am at a loss as to how to stop the payments coming out.

**Date of experience:** November 20, 2022

KO **krzysztof obiedzinski**
7 reviews GB

Nov 28, 2022

**Cant access any courses anymore**

Cant access any courses anymore. Despite my subscription running out on 3rd of February 2023, I can't enroll to any courses anymore. Avoid the place, there are many more other training providers who dont cheat their customers.

**Date of experience:** November 27, 2022

RD
Rita Dorsett
1 review US

7 days ago

**I have no subscriptions or purchases**

I have no subscriptions or purchases, yet I am being charged $78 per month. I cannot get a contact email, name, or number to complain. As for chat, I was told they do not have a record of my account. I am charged $39 on Paypal and $39 on Citibank.

**Date of experience:** November 04, 2022

JA
James Au
1 review TH

Nov 2, 2022

**Kept billing me for months after I quit...**

Kept billing me for months after I quit the service.

**Date of experience:** November 01, 2022

PT
Patrick The rock
1 review AU

Oct 31, 2022

**Steal money from my pocket without any...**

Steal money from my pocket without any notification!!!
At least you should send me an email in advance so that I can decide if I would like to pay!!!
And more when I try to have a refund, they told me it is non-refundable. Ridiculous!!!

**Date of experience:** October 30, 2022

PT
Phillipp Tugend
1 review
DE

Oct 31, 2022

**It WAS good, but know it is scam**

I really don't get it... I bought the program for 37€. Suddenly Coursera introduced a "Plus" program and now I am not able to work on any course that I used previously. I was not aware that PLUS is even more expensive then the 37€...

For me that's a huge scam, because now all google and IBM courses are only included in the BIG membership.
I've canceled my subscription and I would not recommend to use this page, since they are changing the pricing models and suddenly you need to pay much more then before.

**Date of experience:** October 30, 2022

Gloria Kennedy
1 review
US

Updated Oct 3, 2022

**They are charging me $39 twice for one course!**

They are charging me twice monthly for a single course. Since I signed up two months ago, I have two $39 dollar charges each month. Two August 24 and two September 24. I have repeatedly tried to communicate with them however it's impossible. They don't reply to any means of communition. Are they involved in fraudulent activity????

**Date of experience:** September 27, 2022

EH
Evelyn Huang
1 review AU
Sep 2, 2022
$54 keeps being deducted but cannot finish course!!!!
I purchased Google Data Analytics Professional Certificate, but due to Coursera system errors, I cannot finish my course, I tried to post in the forum. I contacted the help center (ticket number: 03303598)
for 2 months but nothing is working out. Coursera keeps deducting A$54 from my bank monthly. It is a such bad experience and a waste of money!!!
Date of experience: September 01, 2022
MT
Marwen Trabelsi
18 reviews TN
Oct 2, 2022
"Enroll for free " but then you click...
"Enroll for free " but then you click and its free trial and require a credit card.
that was a lie, greedy and scammy im happy did not buy any sub from you!
Date of experience: October 01, 2022
IC
Il Chil Illias
1 review CH
Aug 3, 2022
Complete scam with no refund
To explain:
- I tried "free course" for first 7 days.
- While I created account it was obligatory to fill credit-card info.
-I was debited for 39$.
-Even subscription is cancelled you will be never refuneded.
To avoid: any web-site asking credit card credentials while creating account.
Date of experience: August 03, 2022

ER **Erin**
1 review US

Jul 29, 2022

**VERY Shady Billing Practices**

I have proof that I canceled my subscription in December of last year and provided this to Coursera support, but I continue to get charged. I have been trying to get the charges to stop for the past 7 months. Each time I contact support, they respond up until the point where I provide them with evidence of my subscription cancellation and charges. I have never experienced anything so shady in my entire life. Don't subscribe to this company; even if you cancel, they will continue to charge you and refuse to answer any emails no matter how often you follow-up. The charges are fraudulent at this point.

**Date of experience:** July 29, 2022

**teresa mosley**
1 review US

Dec 22, 2022

**Unable to cancel free trial**

I signed up for a free trial, and wasn't impressed with them. The website is difficult to navigate and the help section isn't actually very helpful.

I tried to cancel by free trial, but the instructions to do so were incorrect. There was no free trial ever listed under my subscriptions, so I couldn't cancel.

Now I am having to hash it out with them to get my money back when it seems this is a common issue from them.

**Date of experience:** December 15, 2022

72. Coursera also has an "F" rating on the Better Business Bureau ("BBB").[26] The following are some example of the complaints filed with the BBB:

[26] https://www.bbb.org/us/ca/mountain-view/profile/online-education/coursera-inc-1216-355709



**Initial Complaint**
11/10/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered

I signed up and never used services. I tried to cancel my subscription since May/June 2022 and continue to be charged. I have gotten no response. I would like a credit since when I canceled and to not be charged further. The website makes it extremely difficult to contact customer service.

**Initial Complaint**
11/02/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Answered

I purchased the ******************************** for my sister ******* *****), through ********. ****** has had several issues with logging in and is locked out of the program. She has not been able to get a live person to help her or even respond to emails. I have reached out to ******** to stop monthly payment being charged to my credit card. I have not received a response to my email and there is no phone number to speak with a live agent. We are disappointed that Coursea does not provide the proper customer service so that users/students/payors can contact them for course info, account issues or payment issues.

**Initial Complaint**
11/01/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Answered

I signed up for a Google Professional Certificate program via Coursera. I finished the course and received my certificate yet I was still charged the following month. Why is there an automatic charge if I had completed the course in its entirety? This feels dishonest and I expect better from a company that is in the business of education. I had a great experience with Coursera and was planning on taking additional courses but this shady billing policy is holding me back. Get rid of this ridiculous policy. My refund request was denied by the business and I'd like to be refunded.

**Initial Complaint**
10/24/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Answered

I attempted to cancel a recurring subscription yet when I log-in to do so as outlined in email to manage the subscription and as outlined in the "Help" section - the subscription does not appear nor does the course in the mycourse section. I want the charges to stop immediately and for ******** to make it clear and straightforward to cancel subscriptions. Order Number XXXXXXXXX Payment Method XXXX-XXXX-XXXX-**** ********** Subtotal (USD) ***** Sales Tax (USD) **** Total (USD) *****

**Initial Complaint**
10/24/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Answered

I took a class through my Community College ****** Central ******** ******** and paid the charges that I assumed would apply during the course of the class period. When the school year ended they continued to charge the monthly fee of ****** for 5 months afterwards without permission to deduct this from my card. There is no way to contact them via phone where anyone is responsive, there is no response if you leave a message. I have been charged a total of $ ****** without them ever contacting me with information that any subscription was still active. This is a very questionable business practice. I would like the unauthorized charges returned to my account.

**Initial Complaint**
10/18/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered ?

I've tried everything to cancel my subscription and to even get in contact with someone on the website but ******** makes it impossible to do either. There is no "manage my subscriptions" tab on my account so I cannot manage it. I want to cancel!! No, I don't have multiple accounts; just one. I feel like they do this so they can continue taking money from you in hopes you give up on trying to cancel.

**Initial Complaint**
09/28/2022

**Complaint Type:** Problems with Product/Service
**Status:** Resolved ?

I have canceled a ******** Plus subscription and received the following email confirming that. Forwarded message From: ******** ******************************** Date: Fri, Sep 2, 2022 at 9:47 PM Subject: ******** Plus Cancellation Confirmation To: **************** " We're sad to see you go Hi .. ..., We've successfully canceled your ******** Plus subscription, and you'll no longer be charged. You have access to all courses in the ******** Plus catalog until September 02, 2023 ****** We hope to see you back on ******** soon! " Then I found out that I have not received the refund 20 days later.

**Initial Complaint**
08/26/2022

**Complaint Type:** Problems with Product/Service
**Status:** Unanswered ?

I passed my class on Coursera so I was no longer in need of their services. So I tried canceling my subscription but it appeared like "you have no purchase history" so I assumed my account got canceled after I passed my classes. I tried contacting them by the number provided on the website and it just sent me to consumer affairs, I tried finding their email and I couldn't find an email, I also tried to contact them through the chat and it wouldn't let me. They just make it extremely difficult to contact them which also makes it extremely difficult to get my subscription canceled and refunded. I think this website really needs to upgrade their communication skills because they are basically stealing money by making it extremely difficult to contact them for any problems. I recently emailed them today which I finally found the chat log because of someone on YouTube that showed you how to find it, not because the website made it accessible or easy to do it. And they find it extremely unfair for the consumer to have to deal with this. Please have them contact me immediately so I could get my subscription canceled, a refund, and so they could fix their communication. I am lucky to have the time and the knowledge to be able to contact you and some are not lucky and it is not fair for them to just accept the fact that they're gonna get charged and they can't do anything about it.

### C. California's Automatic Renewal Law

73. In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, et seq., with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600 (statement of legislative intent).

74. More recently, in 2018, California's Senate Bill 313 amended Section 17602 of the ARL, adding new requirements meant to increase consumer protections for, among other things, orders that contain free trial and promotional pricing, and subscription agreements entered into online.

75. The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.
>
> (2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.
>
> (3) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

**Cal. Bus. & Prof. Code § 17602(a)(1)-(3).**

76. Section 17602(b) of the ARL further provides:

> A business that makes an automatic renewal offer or continuous service offer shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

**Cal. Bus. & Prof. Code § 17602(b).**

77. Additionally, following the 2018 amendment to the ARL, the updated law requires e-commerce sellers doing business in California to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online. Specifically, Section 17602(c) provides:

> [A]consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service exclusively online, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information.

**Cal. Bus. & Prof. Code § 17602(c)** (emphasis added).

78. The updated ARL also requires a seller who provides an automatic offer that includes a free gift, trial, or promotional pricing to notify consumers about how to cancel the auto-renewal before they are charged. Sellers must also explain the price to be charged when the promotion or free trial ends. If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing. *Id*.

79. Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." Cal. Bus. & Prof. Code § 17601(a).

80. Section 17601(b) of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels. (2) The description of the cancellation policy that applies to the offer. (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or

arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known. (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer. (5) The minimum purchase obligation, if any." Cal. Bus. & Prof. Code § 17601(b).

81. Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c).

82. Finally, Section 17603 of the ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent," the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business." Cal. Bus. & Prof. Code § 17603.

83. As alleged below, Coursera's website, mobile apps, and APIs systematically violate Sections 17602(a)(l), 17602(a)(2), and 17602(a)(3) of the ARL.

**D. Coursera's Subscription Enrollment Process**

84. At all relevant times, Defendant offered various subscriptions plans on a recurring basis monthly basis, and all plans automatically renew at the end of the defined renewal term unless the subscriber cancels. Defendant's monthly subscriptions plans constitute automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

85.     The enrollment process for each Coursera subscription is substantially the same, regardless of the medium used.  Consumers can "join" Coursera for fee by providing full name, email address and creating a password.  After these steps, consumers are able to browse Coursera's course offerings.

86.     After a course is selected, whether it be offered via a "free trial" or require immediate payment, the prospective subscribers is invited to complete the purchase. For the purposes of the ARL and this Complaint, the "relevant portion of the Checkout Page" refers to the text of that portion of the Checkout Page that appears "in visual proximity to the request for consent to the offer[,]" which in this case pertains to the latter block of text located immediately above the final red "Start Free Trial" button that customers must press in order to complete the checkout process.

87.     By way of example, at least as of November 2022, when a consumer signed up for a Coursera "free subscription" via his or her computer web browser, the "relevant portion of the Checkout Page" refers to the disclosures in the block of text above the red "Start Free Trial" button (i.e., the "request for consent"), which contains the following language and appearance:



88. Regardless of how the consumer subscribes (via the Coursera Website on its mobile or desktop format), and irrespective of which particular subscription plan the consumer selects, Defendant fails to disclose the full terms of its auto-renewal program either before or after checkout, and it never requires the individual to read or affirmatively agree to any terms of service, i.e., by requiring consumers to click a checkbox next to the automatic renewal offer terms before consumers complete the checkout process and submit their orders for Defendant's "free" trial subscriptions. Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – its subscribers before charging consumers' Payment Methods on a recurring basis.

**Get Coursera Plus free for a month and learn without limits**

**Try multiple courses at no additional cost**

**Get your first month of Coursera Plus for $39, then $49 monthly.**

You can cancel anytime.

**Access thousands of courses**

Get thousands of learning programs at no additional cost with this monthly subscription.

**Learn exactly what you need**

Create the learning path that's right for your goals. Learn what you want, when you want.

By claiming this offer, you are starting a Coursera Plus subscription with the first 7 days free. **Your Coursera Plus subscription starts today**, which includes this Specialization. If you do not cancel during your trial period **you will be charged $39 plus applicable taxes**

89. The free trial above offered by Coursera seems to indicate that the customer will get access for Coursera for 30-days for free.

90. However, in that area of the advertisement containing the terms of the automated renewal, it sets forth that the free trial is 7- days, not 30-days.

**E. Defendant Violates California's Automatic Renewal Law**

91. At all relevant times, Defendant failed to comply with the ARL in three ways: (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) Defendant charged Plaintiff's and the proposed class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (iii) Defendant failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal.Bus. & Prof. Code §§ 17602(a)(3).

i. **Defendant Fails To Clearly And Conspicuously Present Coursera's Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.**

92. The relevant portion of Defendant's Checkout Page does not clearly and conspicuously present the complete "automatic renewal offer terms[,]" as defined by Cal. Bus. & Prof. Code §17601(b).

93. Specifically, Defendant fails to present a complete "description of the cancellation policy that applies to the offer." Cal. Bus. & Prof. Code § 17601(b)(2). With respect to cancellation, the relevant portion of the Checkout Page states: "You may cancel at any to avoid future charges". The Checkout Page contains no explanation of how to cancel. For example, the Checkout Page does not mention that subscribers cancel their Coursera subscription by visiting

the Coursera website and clicking on the "Individual" tab[27] where you then must the scroll the bottom of the page and click the "Help" link.[28] You then click the "Cancel a free trial" link.[29] There are then additional instructions to follow to cancel.

94. Additionally, the Checkout Page does not state that a subscriber who cancels after the 7-day free trial will not be eligible for a refund after his or her payment method is charged.[30]

95. Defendant therefore failed to place consumers on notice of these aspects of Defendant's cancellation policy in accordance with statute because the ARL requires that companies provide such information "in visual proximity to the request for consent to the [automatic renewal] offer," and in this case Defendant has failed to do so. Cal. Bus. & Prof. Code § 17602(a)(1).

96. Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c).

97. Defendant's inadequate "automatic renewal terms" fall well short of the mark from being conspicuous as defined under the ARL.

---

[27] https://www.coursera.org/courseraplus/?utm_source=gg&utm_medium=sem&utm_campaign=04-CourseraPlus-US&utm_content=B2C&campaignid=9777751587&adgroupid=100171642259&device=c&keyword=coursera%20%2B&matchtype=b&network=g&devicemodel=&adpostion=&creativeid=442114125114&hide_mobile_promo&gclid=Cj0KCQiAyMKbBhD1ARIsANs7rEG7tKWh7bU3p8y-ThxpwzVtAfkoWHl1JNZyq8j0uPeQ1LFxgfGkaOkaAiSKEALw_wcB

[28] https://www.coursera.support/s/learner-help-center

[29] https://www.coursera.support/s/article/115004991443-Cancel-a-free-trial?

[30] https://www.coursera.support/s/article/115001278026-Free-trials-for-subscriptions?language=en_US

98. Specifically, the terms are not "clear and conspicuous" because they are smaller than the text featured in and under the payment information. Additionally, the terms, which appear below the payment information are in a size that is less than 10-point and are illegible to the naked eye without increasing the zoom level even on a large computer screen.

99. At the same time, the illegible terms are much less obvious or noticeable than the text in the middle of the Checkout Page with a large font size and with parts that are in bold and red type.

100. Finally, the terms are clearly overshadowed by the large call-to-action button which is in a large blue, rectangular box containing the words "Start Free Trial" in white letters with the sentence "You won't be charged today" to the right and outside of the large blue, rectangular box.

101. It is clear from the design of Defendant's Checkout Page that Defendant intends to mislead prospective consumers, and has misled consumers, into purchasing its Coursera's subscriptions.

102. Just as confusing is Coursera Plus' monthly free trial offer which states the first month is $39.00, then $49,00 monthly. However, if you read further down Coursera it states that the first 7- days are free.

103. Based on the above, Defendant's deceptive Checkout Page does not "clearly call attention" to its otherwise inadequate "automatic renewal terms" in violation of Cal. Bus. & Prof. Code § 17602(1).

104. Defendant therefore fails to present pertinent information regarding cancellation "before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," as the ARL requires. Cal. Bus. & Prof. Code § 17602(a)(1).

**ii. Defendant Fails To Obtain Consumers' Affirmative Consent To The Automatic Renewal Terms Associated With The Coursera Subscriptions.**

105. Defendant does not require consumers to read or affirmatively agree to any terms of service associated with the Cousera subscriptions, i.e., by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process. In fact, Defendant does not at any point during the checkout process require consumers to read or affirmatively agree to any terms of service associated with their subscirption. Accordingly, when Defendant automatically renews customers' Cousera subscriptions, Defendant charges consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2).

106. Specifically, Defendant does not at any point during the checkout process require consumers to read or affirmatively agree to any terms of service associated with their Coursera Subscriptions, e.g., by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process.

107. At all relevant times, Defendant has been well aware that its subscriptions fail to comply with California's ARL as evidenced by the number of complaints lodged against it on Trustpilot's website. The facts giving rise to Plaintiff's claims are materially the same as the Class he seeks to represent.

108. By and through these actions, Defendant has charged Plaintiff's and Class members' Payment Methods in direct violation of the ARL. As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

## CLASS ACTION ALLEGATIONS

109. **Class Definition**: Plaintiff brings this action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure on behalf of a class of similarly situated individuals, defined as follows (the "Class"): The Two Classes defined as follows:

a. The National Class, preliminarily defined as all Coursera customers in the United States who were automatically enrolled into and charged for at least one month of Coursera's membership by Defendant at any time from [applicable statute of limitations period] to the date of judgment.

b. The California Class, preliminarily defined as all persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, incurred renewal fee(s) in connection with Defendant's subscription offerings.

110. Specifically excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

111. Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

112. ***Numerosity.*** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, the Class comprises at least thousands of consumers throughout California. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

113. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether Defendant's Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof. Code §

17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiffs' and Class members' Payment Method for an automatic renewal service without first obtaining their affirmative consent to the automatic renewal offer terms in violation of Cal. Bus. & Prof. Code§" 17602(a)(2); (d) whether Defendant failed to provide an acknowledgment that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiffs and the Class, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*., and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (g) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (h) whether Plaintiffs and the Class are entitled to damages and/or restitution; (i) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (j) whether Plaintiffs and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

114. ***Typicality.*** The claims of Plaintiffs are typical of the claims of the Class in that Plaintiffs and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to obtain Plaintiffs' and the Class' affirmative consent to the

automatic renewal offer terms or continuous service offer terms associated with the Coursera Subscriptions before charging their Payment Methods.

115. ***Adequacy***. Plaintiffs will fairly and adequately protect Class members' interests. Plaintiffs has no interests antagonistic to Class members' interests, and Plaintiffs have retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

116. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

**COUNT I**
**Violation of the Electronic Funds Transfer Act**
**15 U.S.C. 1693, et seq.**
**(On behalf of Plaintiffs and Nationwide EFTA Subclass)**

117. Plaintiffs incorporate the previous allegations as though fully set forth herein.

118. Plaintiffs seek to recover for Coursera's violations of the Electronic Funds Transfer Act on behalf of herself and the Nationwide EFTA Subclass.

119. The EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. §§ 1693 et seq. The "primary objective" of the EFTA "is the provision of individual consumer rights." Id. § 1693(b).

120. Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l.

121.    Coursera's transfers of money from the bank accounts of Plaintiffs  and members of the Nationwide EFTA Subclass, via their debit cards, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 et seq. An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7). The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal." 12 C.F.R. § 205.3(b)(v).

122.    The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9). The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer." 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

123.    Section 1693e(a) of the EFTA prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.10(b).

124.    Plaintiffs and members of the Nationwide EFTA Subclass each maintained an "account" as that term is defined in 15 U.S.C § 1693a(2) and are "consumers" within the meaning of 15 U.S.C. § 1693a(5).

125.    Coursera uniformly and routinely initiated preauthorized electronic fund transfers and took money from the bank accounts of the Plaintiffs and members of the Nationwide EFTA Subclass without obtaining their written authorization for the transfers, as required by the EFTA and Regulation E.  Coursera also uniformly and routinely failed to provide a copy of any such written authorization to Plaintiffs and the Nationwide EFTA Subclass members from whose bank accounts Coursera took preauthorized electronic fund transfers for monthly membership fees.

126.    Coursera took funds from bank accounts managed by Plaintiffs via debit card. In none of these instances did Coursera obtain Plaintiffs' written authorization, nor did Coursera provide Plaintiffs with copies of any such written authorizations.

127.    The Official Staff Interpretation of Regulation E explains, "when a third-party payee," such as Coursera, "fails to obtain the authorization in writing or fails to give a copy to the consumer … it is the third-party payee that is in violation of the regulation." 12 C.F.R. Part 205, Supp. I, § 205.10(b), cmt. 2.

128.    As a direct and proximate result of Coursera's violations of the EFTA and Regulation E, Plaintiffs and class members have suffered damages in the amount of the unauthorized debits taken by Coursera. 15 U.S.C. § 1693m. As a further direct and proximate result of Coursera's violations of the EFTA and Regulation E, Plaintiffs and the Nationwide EFTA Subclass members are entitled to recover statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net worth of the defendant." Id. § 1983m(a)(2)(B).

129.     Pursuant to 15 U.S.C. § 1693m, Plaintiffs and the Nationwide EFTA Subclass are also entitled to recover costs of suit and attorneys' fees from Coursera.

**COUNT II**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of Plaintiffs and California Class)**

130.     Plaintiffs re-allege and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

131.     Plaintiffs bring these claims individually and on behalf of the members of the proposed Class against Defendant.

132.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus.

& Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

133.     As alleged below, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiffs and the Class.

134.    Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful and/or unfair conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*

135.    Specifically, Defendant failed, and continues to fail, to: (a) provide the auto-renewal terms associated with its Coursera Subscription "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiffs and the Class to those terms before charging their Payment Method, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).

136.    Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Coursera Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

137.    Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

138.    All products received from Defendant in violation of the ARL, Cal. Bus. Prof. Code §§ 17602, *et seq.*, constitute "unconditional gifts." *See* Cal. Bus. Prof. Code § 17603.

139.    As a direct and proximate result of Defendant's unlawful and/or unfair practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiffs and the Class in the form of payments made by Plaintiffs and the

Class for their Coursera Subscriptions. Defendant has profited from its unlawful and/or unfair acts and practices in the amount of those business expenses and interest accrued thereon.

140. Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

141. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

142. Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

143. Plaintiffs and the members of the Class have suffered a substantial injury in fact and lost money by virtue Defendant's acts of unfair competition, which caused them to purchase the Coursera Subscriptions. Had Defendant complied with its disclosure obligations under the ARL, Plaintiffs and members of the Class would not have purchased their Coursera Subscriptions or would have cancelled their Coursera Subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees. Thus, Plaintiffs and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

144. Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct. The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the Coursera Subscriptions are still used by Defendant today.

145. Plaintiffs and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiffs' and the Class's Payment Method in connection with their Coursera Subscriptions during the four years preceding the filing of this Complaint. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiffs and the Class, from whom they were unlawfully taken.

146. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

147. Plaintiffs bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

**COUNT III**
**Conversion**
**(On behalf of Plaintiff and California Class)**

148. Plaintiffs re-allege and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

149. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

150. As a result of charges made by Defendant to Plaintiff's and Class members' Payment Methods without authorization and in violation of California law, Defendant has taken money that belongs to Plaintiff and the Class.

151. The amount of money wrongfully taken by Defendant is capable of identification.

152. Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice within the meaning of Cal. Civil Code § 3294(c).

153. As a result of Defendant's actions, Plaintiff and the Class have suffered damages.

**COUNT IV**
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(On behalf of Plaintiff and California Class)**

154. Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

155. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

156. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

157. Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading.

158. Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

159.   Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's Coursera Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments. Such representations and omissions on the Checkout Page constitute false and deceptive advertisements.

160.   Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived. Plaintiffs and the members of the Class were deceived by Defendant's statements and omissions made online when they signed up and started paying for their Coursera Subscriptions, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well.

161.   Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions. Plaintiffs and other members of the Class did not learn of Defendant's cancellation and automatic payment policies until after they had already signed up and started paying for Defendant's Coursera Subscription. They relied on Defendant's statements and omissions to their detriment.

162.   Plaintiffs and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the Coursera Subscriptions on the same terms if the true facts were known about the product and the Coursera Subscriptions do not have the characteristics as promised by Defendant. Plaintiffs, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their

money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

**COUNT V**
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiff and California Class)**

163. Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

164. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

165. Plaintiffs and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiffs and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

166. Defendant's selection and/or subscription offers are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b). The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

167. The acts and practices of Defendant as described above were intended to deceive Plaintiffs and the Class as described herein, and have resulted, and will result, in damages to Plaintiffs and the Class. These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that the Coursera Subscriptions have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

168.    Plaintiffs and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase Coursera Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid. Had Defendant fully and clearly disclosed the terms associated with the Coursera Subscriptions, Plaintiff and the Class would have not subscribed to Coursera or they would have cancelled their Coursera Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

169.    Plaintiffs and the California Subclass members presently seek only injunctive relief under this Count. If Defendant fails to remedy the violations alleged herein within 30 days of receipt of Plaintiff's notice, Plaintiffs will amend this Complaint to add claims damages pursuant to the CLRA.

**COUNT VI**
**Unjust Enrichment/Restitution**
**(On behalf of Plaintiff and California Class)**

170.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

171.    Plaintiffs brings this claim individually and on behalf of the members of the proposed Class against Defendant.

172.    Plaintiffs and the Class conferred benefits on Defendant by purchasing the Coursera Subscriptions.

173.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and the Class's purchases of the Coursera Subscriptions. Retention of those moneys under these circumstances is unjust and inequitable because Defendant's failure to disclose material terms of the purchase agreement, in violation of California law, induced Plaintiffs and the Class to purchase the Coursera Subscriptions. These omissions caused injuries to Plaintiffs and the

Class because they would not have purchased the Coursera Subscriptions at all, or on the same terms, if the true facts were known.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a) Issue an order certifying the Classes defined above, appointing the Plaintiff as Class representative, and designating Milberg LLP as Class Counsel;

(b) Find that Defendant has committed the violations of law alleged herein;

(c) Determine that Defendant has been unjustly enriched as a result of its wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Nationwide Class or, alternatively, the State Classes;

(e) Enter an order granting all appropriate relief including injunctive relief on behalf of the State Classes under the applicable state laws;

(f) Render an award of compensatory damages, the exact amount of which is to be determined at trial;

(g) Render an award of punitive damages;

(h) Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(i) Grant all such other relief as the Court deems appropriate.

Dated January 31, 2023.

Respectfully submitted,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

s/ *John J. Nelson*
John J. Nelson (SBN 317598)
401 W Broadway, Suite 1760
San Diego, CA 92101
Tel.: (858) 209-6941
jnelson@milberg.com

*Attorney for Plaintiffs and the Putative Classes*